1  SCHUCHERT, KRIEGER, TRUONG,
   SPAGNOLA & KLAUSNER, LLP
2  Eliot F. Krieger, State Bar No. 159647
3  E-Mail: eliot@sktlawyers.com
   Siobhan Bishop, State Bar No. 198686
4  E-Mail: siobhan@sktlawyers.com
5  Karl D. Truong, State Bar No. 283507
   E-Mail: karl@sktlawyers.com
6  444 W. Ocean Boulevard, Suite 1700
7  Long Beach, CA 90802
   (562) 597-7070
8  (562) 597-7772
9  Attorneys for Plaintiff
   MAI NGOC BUI

10

11            **UNITED STATES DISTRICT COURT**

12           **CENTRAL DISTRICT OF CALIFORNIA**

13              **SOUTHERN DIVISION**

| | |
|---|---|
| MAI NGOC BUI, an individual, | Case No.: SACV 14-0757-DOC(RNBx) |
|      Plaintiff, | THIRD AMENDED COMPLAINT FOR: |
| vs. | 1) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ((RICO) 18 U.S.C. §§ 1961, 1962, 1964); |
| LAN BICH NGUYEN, an individual; HUNG TRAN, an individual; TON PHI NGUYEN, an individual; MIMI THUY NGUYEN, an individual; VU NGUYEN, an individual; TRI TRAN, an individual; SKAII INVESTMENT LLC, a California Company; LANG VAN, INC, a California Corporation; BETTER FUTURE INVESTMENT, LLC, a California Company; | 2) RICO CONSPIRACY (18 U.S.C. §§ 1962, 1964); 3) ELDER FINANCIAL ABUSE (CAL. WIC §§ 15657.5, ET SEQ.); 4) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ.; 5) BREACH OF FIDUCIARY DUTY; 6) BREACH OF PROMISSORY NOTE; |
|     Defendants. | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7) BREACH OF PROMISSORY NOTE;
8) BREACH OF PROMISSORY NOTE;
9) FRAUD;
10) NEGLIGENT MISREPRESENTATION;
11) NEGLIGENCE; AND
12) ACCOUNTING

**JURY TRIAL DEMANDED**

Plaintiff MAI NGOC BUI ("Bui"), by her undersigned counsel, alleges as follows:

## JURISDICTION

1.     This Court has subject matter jurisdiction over the First and Second Claims for Relief herein pursuant to 28 U.S.C § 1331 in that they arise under United States Statute 18 U.S.C. § 1964(c). This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. § 1367(a), in that they arise from the same nucleus of operative facts as the Claims for Relief over which this Court has original jurisdiction and as such are so related to those Claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     This Court has personal jurisdiction over each of the Defendants pursuant to 18 U.S.C. § 1965(a) and (b).

## VENUE

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and § 1965(a) of RICO because Defendants transacted their affairs in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and because, in accordance with 18 U.S.C. § 1965(b), the ends of justice require that all Defendants be brought before this Court.

## NATURE OF THE CASE

4.      This case arises from a series of separate, but related, fraudulent transactions carried out in Orange and Los Angeles counties by Defendants Lan Nguyen ("Lan"), Mimi Nguyen, Ton Nguyen, and Vu Nguyen (collectively the "Nguyen Family Defendants"); the business entities controlled and managed by the Nguyen Family Defendants: Defendants Skaii Investment, LLC, Lang Van, Inc., , Better Future Investment, LLC, World Media Services, Inc., Goldenwest Circle Holdings, LLC and Alkaline, LLC (collectively the "Business Defendants"); and Defendants Hung Tran ("Hung") and Tri Tran ("Tri"), who materially participated directly and indirectly in the scheme. (The Nguyen Family Defendants, Business Defendants, Hung and Tri are sometimes referred to collectively as the "Defendants").

5.      Defendants' victim was Bui, a 76 year-old retired woman who cannot read or write English, and who can barely understand and speak it.

6.      The Nguyen Family Defendants, Hung and Tri, by and through each other and the Business Defendants, defrauded Bui of no less than $5.377 million in cash, beginning in August 2012 and continuing until this lawsuit was filed.

7.      Defendants defrauded Bui by means of deliberate, calculated and malicious illegal acts, including actual fraud, wire/mail fraud and forgery.

8.      As a consequence of Defendants' unlawful conduct, Bui lost no less than $5.377 million.  She now seeks relief, including actual, punitive, and treble damages, along with her attorney's fees and costs in investigating and prosecuting this action.

9.      Through their conduct, as detailed below, Defendants conducted or participated, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity, or conspired to do so, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

10.      Through their conduct, as detailed below, Defendants also committed Financial Elder Abuse, in violation of California Welfare & Institutions Code §§

---

THIRD AMENDED COMPLAINT

15657.5 et seq. and California Business & Professional Code §§ 17200 et seq.

11.     Through their conduct, as detailed below, Lan and Hung formed a business partnership with Bui and breached their fiduciary duties owed to her as her business partners pursuant to California Corporations Code § 16404.

12.     Through their conduct, as detailed below, Defendants committed common-law actual fraud and negligent misrepresentation against Bui.

13.     The conduct of Defendants, as detailed below, additionally gives rise to claims for relief by Bui for breach of promissory notes, negligence and accounting.

## PARTIES

### Bui

14.     Bui is now, and at all times mentioned herein, an individual residing in the City of Lake Elsinore, County of Riverside, State of California.

15.     Bui was born in 1938, and at the time complained of herein, is and was over the age of sixty-five (65) years and is an elder as defined by California Welfare & Institutions Code §15610.27 and California Civil Code §§ 1761(f).

### Nguyen Family Defendants

16.     Defendant LAN BICH NGUYEN ("Lan") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California. Lan is the mother of Ton, Mimi and Vu.

17.     Defendant TON PHI NGUYEN ("Ton") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California. Ton is a son of Lan and is President of Lang Van.

18.     Defendant MIMI THUY NGUYEN ("Mimi") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California. Mimi is a daughter of Lan and is the controlling interest holder of Skaii.

19.     Defendant VU NGUYEN ("Vu") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California. Vu is a

son of Lan.

### Business Defendants

20.     Defendant SKAII INVESTMENT LLC ("Skaii") is now, and at all times mentioned herein was, a California limited liability company with a principal place of business in the City of Huntington Beach, County of Orange, State of California. Mimi is the controlling interest holder and managing member of Skaii.

21.     Defendant LANG VAN, INC. ("Lang Van") is now, and at all times mentioned herein was, a California corporation with a principal place of business in the City of Westminster, County of Orange, State of California and with offices located in the City of Falls Church, State of Virginia, the City of Atlanta, State of Georgia, and Ho Chi Minh City, Socialist Republic of Vietnam. Ton is the President of Lang Van.

22.     Defendant BETTER FUTURE INVESTMENT, LLC ("Better Future") is now, and at all times mentioned herein was, a California limited liability company with a principal place of business in the City of Westminster, County of Orange, State of California. Ton is the controlling interest holder and managing member of Better Future.

### Other Defendants

23.     Defendant HUNG TRAN ("Hung") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California and doing business as an unlicensed acupuncturist with a principal place of business in the City of Santa Ana, County of Orange, State of California.

24.     Defendant TRI TRAN ("Tri") is now, and at all times mentioned herein was, an individual living in the County of Orange, State of California.  Bui is informed, believes and thereon alleges that Tri is a relative of Hung.

### Defendants' Alter Ego Liability

25.     Adherence to the fiction of the separate existence of Lan, Hung, Ton,

Mimi, Vu and Skaii would permit an abuse of the corporate privilege and would promote injustice in that the Lan, Hung, Ton, Mimi, and Vu have used Skaii to work a fraud upon Bui and have otherwise used the assets of Skaii for their own personal use, to the detriment of Bui.

### Defendants' Agency Liability

26.     Bui is informed and believes, and on that basis alleges, that at all times mentioned herein, each Defendant was the agent of each other Defendant.  Further, in doing the things hereinafter alleged, each was acting within the course and scope of such agency. At the same time, each Defendant was motivated in part by self-interest, evil motive, ill-will for Bui and has aided and abetted each other Defendant to commit the wrongful conduct specified herein and should be held liable in full for the consequences caused thereby.

### FACTUAL BASIS FOR THE CLAIMS
### DEFENDANTS' SCHEME TO DEFRAUD BUI

27.     For more than ten (10) years, Bui regularly visited Hung at his home, where he operates an unlicensed acupuncture practice.  Although unlicensed in the practice of medicine, Hung routinely introduces and refers to himself as "Doctor Tran." Bui developed a relationship of complete trust and confidence with Hung.

28.     In or about August 2012, Bui told Hung that a member of her family had won millions of dollars in the lottery and that she would receive a share of more than $6 million.

29.     In or around August 2012, Hung met with Lan, his business partner and a well-known Vietnamese music artist and real estate investor.  Hung informed Lan of Bui's fortune.  Together, Hung and Lan contrived a scheme involving real estate acquisitions, whereby they would gain Bui's trust and ultimately loot her accounts.

### A.    Theft of $40,000

30.     On or about August 2, 2012, Hung convinced Bui to loan him $40,000.00 cash, evidenced by an unsecured promissory note ("Note #1"), which Hung stated was needed by his sick mother in Vietnam.

31.     On or about August 2, 2012, Hung caused the $40,000 given to him by Bui to be transmitted via interstate wires or the U.S. mail to himself or to other individuals in Vietnam known only to Hung and to other Defendants.

32.     Hung has not repaid any amount of Note #1.  A true and correct copy of Note #1 is attached hereto as Exhibit 1 and is incorporated by this reference as though fully set forth herein.

33.     By borrowing this relatively large amount of money from Bui so easily, Hung determined that Bui, because of her age, inability to read or write English, and the fact that she was not receiving any assistance in managing her financial affairs, was an ideal victim.

34.     All of the $40,000 misappropriated by Hung was in furtherance of the scheme to defraud Bui and is claimed by Bui as actual damages herein.

**B.     Introduction to Lan**

35.     The ease by which Bui was defrauded of the first $40,000 confirmed that she was an easy mark.  Accordingly, Hung introduced Bui to Lan, who elevated the scheme to defraud to a more sophisticated level, proposing a master investment plan involving the purchase, development and sale of property whereby Bui would purportedly make a healthy profit on her newly-won fortune.  Because Bui trusted Hung implicitly, she also trusted Lan.

36.     On October 19, 2012, Bui received the first of two disbursements from her family in the amount of $3,580,540.43 into her Wells Fargo Checking Account.  She transferred $3,000,000.00 of these funds into a Wells Fargo Savings Account.  On February 26, 2013, Bui received a second disbursement in the amount of $2,769,172.20, which was also deposited in her Wells Fargo Checking Account.

**C.**   **The Santa Ana Property**

37.     In October 2012, Hung and Lan convinced Bui to purchase a residential property for investment purposes at 225 N. Figueroa, Santa Ana ("Santa Ana Property"). Unbeknownst to Bui, the Santa Ana Property was owned by Lan's son, Ton.  Hung and Lan persuaded Bui that this was a safe investment and that Lan could manage and collect rent on the property for Bui.

38.     Ton came to own the property after the Nguyen Family Defendants stole the identity of Sarah Rhee ("Rhee") and used it to buy and borrow against the Santa Ana Property.

39.     As discussed in more detail below, Bui's money was used to purchase the property close to the time that Lan, Mimi, and Ton settled Rhee's civil suit against them.  At least some of Bui's money from this transaction was in fact disbursed to Rhee's attorneys.

40.     On October 31, 2012, Lan drove Bui to the office of Cali Escrow, Inc., and Bui signed the paperwork to close her purchase of the Santa Ana Property.

41.     On November 1, 2012, at Lan's direction, Bui wired $781,321.83 to Union Bank for Cali Escrow, Inc. from her Wells Fargo Savings Account.

42.     Bui is informed and believes and thereon alleges that this transaction was not intended to benefit Bui, but rather was a source of cash for the Nguyen Family Defendants to settle Rhee's civil claims against them.

43.     Lan, Mimi, and Ton directly benefited thereby from this transaction and Bui directly sustained damages in the amount of $781,321.83.

44.     Furthermore, the Santa Ana Property transaction played a material role in convincing Bui that Lan and Hung were providing legitimate financial guidance to Bui, when in fact Lan, Mimi, Hung and Ton were setting up Bui to defraud her.

45.     This was not a suitable investment for someone of Bui's age and financial circumstances.

D.    **Huntington Beach Property # 1**

46.    Having gained Bui's trust with a relatively simple real estate purchase, Hung and Lan furthered their scheme to defraud Bui by moving on to a more complicated real estate transaction.  They told Bui that there were two properties in Huntington Beach on Chicago Street ("Huntington Beach #1") that could be purchased for $1.02 million.  They explained to Bui that they planned to demolish the existing two (2) homes on the property, build three (3) new homes in their place, and sell them for a significant profit.

47.    Hung and Lan convinced Bui to purchase Huntington Beach #1 in an equal partnership with Hung.  Since Hung did not have any money of his own, Hung and Lan persuaded Bui to loan Hung his share of the purchase price.

48.    Pursuant to Lan's coaxing, Bui agreed to invest $1 million directly into Huntington Beach #1 ($500,000 for her half of the purchase price and $500,000 for her share of construction costs) and to loan $1 million to Hung ($500,000 for his half of the purchase price and $500,000 for his share of construction costs). They agreed that ownership would be split 50/50 between Bui and Hung.

49.    By representing to Bui in this way that they were forming a business partnership, Lan and Hung undertook fiduciary duties to Bui as her partners, pursuant to California Corporations Code § 16404.

50.    In furtherance of this agreement, on or about November 1, 2012, Bui withdrew $1.5 million from her Wells Fargo Savings Account and opened a joint Wells Fargo checking account with Hung ("Joint Bui/Hung Account").

51.    On or about November 6, 2012, Hung and Bui executed an unsecured promissory note ("Note #2") to evidence the $1 million dollar loan from Bui to Hung.  A true and correct copy of Note #2 is attached hereto as Exhibit 2 and is incorporated by this reference as though fully set forth herein.

52.    On or about November 6, 2012, Hung wire transferred $972,741.24 from the Joint Bui/Hung Account for the purchase of Huntington Beach #1, which was jointly

vested in the names of Bui and Hung.

53.     Of the $500,000 Bui contributed for construction costs, approximately $300,000 was spent on construction.   The remaining $200,000 has vanished and is unaccounted for.

54.     Upon information and belief, Hung and/or Lan caused the $200,000 to be transmitted via interstate wires or the U.S. mail sometime between November 6, 2012 and the filing of this lawsuit to Hung and/or Lan and/or to other persons known only to Hung or Lan.

55.     Lan assisted in closing the transaction with Freedom Escrow, Inc. Lan, Mimi and Hung subsequently obtained $1.8 million in construction loans at 9.5% interest, secured against Huntington Beach #1 from "money lenders" associated with Lan.  To date, Hung has not repaid any principal of Note #2.

56.     The total amount invested and borrowed for Huntington Beach #1 calculates to a cost of about $1 million per unit so far.

57.     This was not a suitable investment for someone of Bui's age and circumstances and the entire $1.2 million of her money used on the project is an actual damage.

### E. **Huntington Beach Property # 2**

58.   At this point, Bui had complete trust and confidence in Hung and Lan, such that in or about January 2013, Lan persuaded Bui to make another investment in Huntington Beach. Lan drove Bui to 235 1st Street ("Huntington Beach #2"), pointed to four (4) homes behind a vacant lot, and told Bui she would like to purchase the land and build four (4) homes in the same manner on Huntington Beach #2. Lan told Bui that the purchase price for Huntington Beach #2 would be about $1.7 million.

59.   Lan persuaded Bui to lend Hung another $500,000 so he could participate in the deal, telling her that Hung is poor and that this is an opportunity for all of them to make money together.  Later, Hung also drove Bui to Huntington Beach #2 to convince

---

her to do as Lan had advised.

60.   Having made two real estate transactions with Hung and Lan Bui agreed.

61.   On February 26, 2013, Lan drove Bui to Wells Fargo to purchase a cashier's check for $1.73 million from Bui's Wells Fargo Checking Account. Lan personally instructed the bank teller to make the check payable to Skaii, a company owned by Lan's daughter, Mimi.  Bui at that time had no idea what Skaii was or that it was owned by Mimi.

62.   Lan gave Mimi the $1.73 million cashier's check. Mimi deposited the check in Skaii's bank account.

63.   On March 4, 2013, Hung executed a hand written, unsecured promissory note in Vietnamese in the amount of $500,000 in favor of Bui ("Note #3").   A true and correct copy of Note #3 is attached hereto as Exhibit 3 and is incorporated by this reference as though fully set forth herein.

64.   Bui paid this sum to Hung by a March 15, 2013 check for $450,000 that Hung wrote to himself from Joint Bui/Hung Account and $50,000 in cash he instructed Bui to give him. Hung has not repaid any amount of Note #3.

65.   Lan's, Mimi's, and Hung's representations to Bui that her money would be used to purchase Huntington Beach #2 were false.  In truth, the funds obtained from Bui to purchase Huntington Beach #2 were thereafter distributed to the other Business Defendants, to the sole benefit of the Nguyen Family Defendants, Hung and the Business Defendants.  None of this money was used to purchase Huntington Beach #2 as represented to Bui.

66.   Bui relied on the representations of Lan, Mimi, and Hung to her detriment. Bui's reliance was reasonable in that, as described above Lan and Hung had obtained Bui's complete trust and confidence on account of their two prior transactions.

67.   A close and thorough analysis of the statement for the bank accounts of Bui, Skaii and Hung reveal that an additional sum of about $1 million was transferred

via the interstate wires from Bui's accounts to the savings and checking accounts of Hung over the period of October 2012 to March 2013.   During this same period, Defendants further transferred the money via interstate wires to Skaii, Better Future, Lang Van, as well as to various third-party individuals and businesses.   Bui never received any accounting for the use of this money.  None of this money was used for the benefit if Bui.

68.   The total sum misappropriated by Lan, Hung Mimi, Skaii, Better Future and Lang Van is $3.224 million, of which the entire amount is actual damages.

**F.   Discovery of the Fraud**

69.   In or about December 2013, Bui's son, Andy Bui ("Andy"), became suspicious when Bui asked to borrow money from him, since he was aware she had recently received millions of dollars.  At this time, Bui told Andy for the first time that she made a variety of investments with Hung and Lan, purchasing properties in Santa Ana and Huntington Beach.

70.   After conducting an investigation, Andy learned Hung fraudulently transferred Bui's one-half interest in Huntington Beach #1 to himself on or about February 6, 2013 by forging Bui's signature on a grant deed.  This transaction was notarized by an individual named Natalie Do.  Bui never intended to transfer her interest in Huntington Beach #1 to anyone and never signed any grant deed doing so.

71.   On or about January 30, 2014, after Andy confronted Hung with these facts, Hung executed and recorded a grant deed returning Bui's interest in Huntington Beach #1.

72.   On or about March 27, 2014, Andy and Bui's nephew, James Tram ("James") confronted Lan, Mimi and Hung regarding $1.73 million that Lan took from Bui. Lan claimed that Bui gave her that money for investing as Lan saw fit. Lan could not identify any specific investment she made and she admitted she had no paperwork for any such investments. Lan alternatively made excuses for the missing money and

made threats of litigation against Andy, James and Bui.  Finally, Lan confessed that she "had lost it all,  I used it, what can we do…?" Lan could not account for any of it. Mimi added, "You need to know your mom [Bui] gave it to her [Lan] as an investment.   As an investment, if she lost, she would've lost it."

73.   Andy demanded that Lan to return the $1.73 million, but Lan stated she would return the $1.73 million only if she received title to one of the homes being built on Huntington Beach #1, even though she had made no investment of her own in that property.

74.   On or about March 28, 2014, James again confronted Hung about the money that had been taken from Bui.  Andy further demanded that Hung record a $1.5 million deed of trust against Huntington Beach #1 to secure the terms of Note #2, but Hung refused.

75.   In this conversation, Hung admitted that some of the money he had personally taken from Bui was invested in real property and businesses in Vietnam in his own name.

76.   Bui is informed and believes, and thereon alleges that between January 2013 and March 2014, Hung transferred money obtained by fraud from Bui to Vietnam using the interstate wires or U.S. mail in order to make these investments.

77.   Hung told James he would repay Bui once he had sold the investments for a profit, but otherwise he gave no details of his supposed "investments" in Vietnam.

G.   **Outright Theft of Bui's Money for the Purchase of the West Hollywood Property**

78.   In their investigation, Andy and James also learned that on December 3, 2012, Hung caused a wire transfer to be made from the Joint Bui/Hung Account to Hanmi Bank for Apex Escrow, Inc. in the amount of $171,701.25.

79.   These funds were used by Tri, apparently a relative of Hung, to purchase a condominium residential property at 700 Westmount Drive, Unit 204, West

Hollywood, CA ("West Hollywood Property") owned by Vu.

80.   To support the purchase, Defendants mailed a forged "gift" letter to the escrow agent in Virgina, indicating that Bui was gifting the $171,701.25 to Tri, identified in the letter as Bui's "brother-in-law."

81.   In reality, Bui does not know who Tri is, and is not related to him.

82.   Tri was a warehouse employee of Lang Van.   Escrow documents for the purchase and sale of this property reveal that Tri represented his personal salary with Lang Van at the time of the transaction to be $38,000.00 a month, a preposterous misrepresentation.

83.   Upon information and belief, Defendants facilitated their purchase of the West Hollywood Property by causing documents containing this misrepresentation to be transmitted by U.S. mail or interstate wires on or about December 3, 2012.

84.   Additionally, the West Hollywood property was in financial distress at the time and the purchase was a short sale.

85.   This use of Bui's in no way benefited her and was not authorized by her; further, she received no interest in the West Hollywood Property.   This transaction solely benefited, at least, Hung, Tri and Vu.  Bui claims the entire sum of $171,701.25 as actual damage.

86.   On or about March 19, 2014, the West Hollywood Property was sold by Tri, who thereby materially and knowingly benefited from the fraudulent West Hollywood Property transaction.  Bui was not informed of the sale and received no proceeds from it.

87.   On March 20, 2014, Hung and/or Lan caused $239,076.68 (the proceeds from the sale of the West Hollywood Property) to be transmitted by interstate wire to an account in the name of Mana Ho and Tri.

88.   On April 30, 2014, Hung and/or Lan caused $172,015 (of the $239,076.68 referenced above) to be transmitted by interstate wire from the account of Tri to an account in the name of Hung.

THIRD AMENDED COMPLAINT

89.   Bui never received any of the profits from the sale of the West Hollywood Property that was purchased with her money, and without her knowledge.  If this transaction was legitimate, rather than simply part of Defendants' scheme to defraud Bui, Bui would have received all or substantially all the proceeds of this sale.

90.   In June 2014, after the filing of this lawsuit, Defendants used the interstate wires or the U.S. mails to transmit more than $87,000 derived from the sale of the West Hollywood Property to their attorneys.  Said funds were used to pay Defendants' fees and costs incurred to defend this action.

## FRAUD IS DEFENDANTS' REGULAR WAY OF DOING BUSINESS

91.   Bui was not Defendants' first victim.  Prior to Bui, Defendants victimized at least three (3) other persons:

**A. Phan Thi Le**

92.   In 2010, Phan Thi Le ("Phan") gave $75,000 cash to Lan to purchase residential property in Santa Ana, California. Lan and Mimi represented to Phan, who resided in Vietnam, that the property was vested in her name and presented a copy of an unrecorded deed showing Phan as the owner.  In addition, Lan and Mimi told Phan that she had purchased the property subject to an existing mortgage and instructed Phan to send Mimi $3,000 a month for the mortgage payment.

93.   This ruse continued for almost four (4) years, until the property was foreclosed on by the lender for non-payment of the mortgage.  At that point, Phan learned that her money was never used by Lan and Mimi to purchase the property, but remained in the name of Ton. Lan and Mimi, and perhaps Ton as well, simply pocketed Phan's money for their own benefit – about $200,000.

**B. The Foulons**

94.   In 2009, Lan offered to assist Toan Foulon and her husband ("the Foulons") to purchase residential property in Westminster, California, owned by a friend of Lan. Lan told the Foulons that the purchase price was $725,000, but that

her friend, the seller, only wanted $500,000 of the purchase price to go through escrow; the remaining $225,000 he wanted in cash, according to Lan. Once the escrow closed for the "official" $500,000 purchase price, Lan sent Lang Van employees in Vietnam to pick up the $225,000 in cash from the Foulons. The Foulons never received any receipt for this cash, and there is no evidence whatsoever that the cash went to anyone but Lan, no doubt for her own use.

**C. Sarah Rhee**

95.     Through a highly sophisticated scheme, Lan and Ton stole Rhee's identity. Rhee was a high school classmate and friend of Mimi. Unlike the other victims, Rhee is not an independently wealthy woman.

96.     Rhee's identify was used by Lan, Mimi and Ton to purchase properties and take out multiple mortgages in her name. This scam resulted in Lan, Ton, and Lan's secretary Tam Hieu Thi Le being criminally charged by the Orange County District Attorney. The charges were later dismissed without prejudice, but the District Attorney is continuing his investigation.

97.     Attached hereto as Exhibit 4 is the Orange County District Attorney's criminal complaint against Lan and Ton in the Rhee matter. Also attached hereto as Exhibit 5 is Rhee's civil complaint against Lan, Ton and Mimi for this conduct. The civil complaint was settled out of court on undisclosed terms.

98.     As described above, Ton came to own the Santa Ana Property (which Lan, Hung, and Ton later fraudulently induced Bui to acquire) after it had been fraudulently purchased and mortgaged by the Nguyen Family Defendants with Rhee's stolen identity.

99.     Bui's money was used to purchase the property close to the time that Lan, MIMI, and Ton settled Rhee's civil suit against them. At least some of Bui's money from this transaction was disbursed to Rhee's attorneys. Bui is informed and believes and thereon alleges that the Santa Ana Property transaction was not intended

to benefit Bui, but rather was a source of cash for some of the Nguyen Family Defendants to settle Rhee's civil claims of identity theft against them.

## Wire and Mail Fraud (18 U.S.C. §§ 1341, 1343)

100. Defendants, by and through each other, engaged in a systematic and continuous scheme with the intent to defraud, deceive, and mislead Bui, and/or to fraudulently obtain Bui's money.  Defendants knowingly devised or knowingly participated in a scheme or artifice to defraud Bui or to obtain the money or property of Bui by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. §§ 1341 and 1343.

101. Defendants' false, misleading, and deceptive statements to Bui are contrary to public policy or fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society in violation of 18 U.S.C. §§ 1341, 1343.

102. Defendants could foresee that the interstate wires and U.S. mail would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341, 1343.

103. In particular, Defendants knew or could foresee that the interstate wires and U.S. mail would be used to transmit money from Bui's accounts to accounts controlled in whole or in part by Defendants and would be used to transmit documents needed to facilitate the closing of sham real estate transactions (described above) and to abscond with the proceeds of those transactions.

104. Defendants acting singly and in concert, personally or through the Business Defendants (or their agents), used the interstate wires or U.S. mail or caused the interstate wires or U.S. mail to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Bui, within the meaning of 18 U.S.C. §§ 1341, 1343.

105. It is not possible for Bui to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control and within the exclusive knowledge of Defendants and other presently unknown individuals.

106. By way of example, however, Defendants specifically used the interstate wires or U.S. mail or caused the interstate wires or U.S. mail to deliver each and every communication described in paragraphs 30-90 that furthered or facilitated Defendants' scheme to defraud Bui including but not limited to the communications identified in paragraph 124.

107. All of the wire communications described in paragraphs 30-90 and 124 crossed interstate and international borders by reason of the technology used to transmit the communications.

108. Each and every use of the interstate wires described paragraphs 30-90 and 124 was committed by Defendants with the specific intent to defraud Bui or to obtain the property of Bui by means of false or fraudulent pretenses, representations, or promises. Defendants' acts of wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

109. Bui justifiably relied on Defendants' fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Bui transferred millions of dollars to Defendants by reason of said statements and omissions.

**Interstate Transportation of Stolen Money (18 U.S.C. § 2314)**

110. Defendants, by and through each other, transported, transmitted, or transferred in interstate or foreign commerce money of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314.

111. In addition to, or in the alternative, Defendants, by and through each other, devised a scheme to defraud or to obtain the money or property of Bui by means of false or fraudulent pretenses, representations, or promises and, pursuant to said scheme, transported or caused to be transported or induced persons to travel in or to be transported in interstate or foreign commerce in the execution or concealment of the scheme to defraud Bui of money or property having a value of $5,000 or more in violation of 18 U.S.C. § 2314.

112. By way of example, Defendants specifically intended and caused to be transported in interstate or foreign commerce all money claimed as actual damages by Bui in paragraphs 30-90, including but not limited to the monetary transactions/transmissions identified in paragraph 124.

113. Each and every monetary transaction/transmission so identified paragraphs 30-90 and 124 as a violation of 18 U.S.C. § 2314 constitutes racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

### Financial Institution Fraud (18 U.S.C. § 1344)

114. Defendants, by and through each other, knowingly executed, or attempted to execute, a scheme or artifice to obtain money or funds or other property under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1344.

115. By way of example, Defendants specifically intended to obtain money or funds or other property under the control or custody of a financial institution by fraud as described in paragraphs 30-90, including but not limited to the monetary transactions/transmissions identified in paragraph 124.

116. Each and every monetary transaction / transmission so identified in paragraphs 30-90 and 124 as a violation of 18 U.S.C. § 1344 constitutes racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

### Money Laundering (18 U.S.C. § 1956)

117.   18 U.S.C. § 1956(c)(7) defines the term "specified unlawful activity" as "any act constituting an offense listed in section 19619(1)," which includes but is not limited to violations of 18 U.S.C. §§ 1341, 1343, 1344 and 2314.

118.   Some or all Defendants knew that the property involved in the financial transactions described in paragraphs 30-90 and 124 represented the proceeds of some form of unlawful activity and conducted such financial transactions (which in fact involved the proceeds of specified unlawful activity) knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the source, the ownership, or control of the proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1).

119.   Some or all Defendants transported, transmitted, or transferred the monetary instruments or funds identified in paragraphs 30-90 and 124 from a place in the United States to or through a place outside the United States knowing that the monetary instruments or funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, the source, the ownership, or control of the proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(2).

120.   Each and every monetary transaction/transmission so identified in paragraphs 30-90 and 124 as a violation of 18 U.S.C. § 1956 constitutes racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

### Extortion (18 U.S.C. § 1951)

121.   On or about March 27, 2014, Lan, by or at the direction or in the interest of the other Defendants, threatened to bring a lawsuit that she knew was a sham against Andy, James, and Bui unless they abandoned their efforts to recover the money Defendants defrauded from Bui.

122.   When she made such threat, Lan intended to obstruct, delay, or affect commerce by inducing Andy, James, and Bui to abandon the money Defendants defrauded from Bui by wrongful use of threatened fear and economic harm in violation of 18 U.S.C. § 1951.

123.   Lan's threat is a violation of 18 U.S.C. § 1951 and constitutes racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

### Summary of Racketeering Activity

124.   As more generally set forth in paragraphs 33-93, Bui alleges that the following acts among others are acts of racketeering as defined by 18 U.S.C. § 1961(1):

| Date | From | To | Statutory Violation(s) | Purpose |
|------|------|-----|------------------------|---------|
|  |  |  |  |  |
| 08/02/12 | Hung | His mother | §§ 1341, 1343,1344, 2314 and 1956 | Obtained $40,000 of Bui's money by fraud and transferred it by interstate wires or U.S. mail to Vietnam. |
| 11/01/12 | Bui | Cali Escrow | §§1343, 1344, 2314 and 1956 | Lan fraudulently obtained $781,321.83 by interstate wire from Bui to facilitate the purchase of the Santa Ana Property and to pay settlement to Rhee. |
| 11/06/12 | Hung | Closing Agent | §§1343, 1344, 2314 and 1956 | Hung fraudulently obtained $972,741.24 by interstate wire from Bui to facilitate the purchase of Huntington Beach #1. |
| After 11/06/12 | Hung | Unknown | §§1341, 1343, 1344, 2314 and 1956 | Hung fraudulently obtained $200,000 from Bui for the purported purpose of financing construction costs for Huntington Beach #1. The money vanished, |

| | | | | |
|---|---|---|---|---|
| | | | | likely transferred by interstate wire or U.S. mail to Vietnam. |
| Before and After 12/03/12 | Tri | Apex Escrow | §§ 1341, 1343 | Escrow documents falsely stating that Tri's monthly salary was $38,000 were transmitted by Defendants by interstate wire or U.S. mail to facilitate the closing of the West Hollywood Property. |
| 12/03/12 | Hung | Apex Escrow | §§1344, 2314 and 1956 | Hung stole and fraudulently concealed from Bui that he took $171,701.25 for the purpose of buying the West Hollywood Property. |
| 12/03/12 | Tri | Apex Escrow | §§ 1341, 1343 | Forged letter from Bui falsely stating that Tri was her brother-in-law, was transmitted by Defendants by interstate wire or U.S. mail to facilitate the purchase of the West Hollywood Property. |
| 02/26/13 | Bui | Skaii | §§ 1341, 1343, 1344, 2314 and 1956 | Lan fraudulently obtained $1.73 million from Bui for the purported purpose of buying Huntington Beach #2.  The money vanished, likely transferred by Defendants by interstate wire or U.S. mail to Vietnam. |
| 03/15/13 | Bui | Hung | §§1341, 1343, 1344, 2314 and 1956 | Hung fraudently obtained $500,000 from Bui for the purported purpose of financing construction |

| | | | | |
|---|---|---|---|---|
| | | | | costs for Huntington Beach #2.  The money vanished, likely transferred by Defendants by interstate wire or U.S. mail to Vietnam. |
| 10/00/12 - 03/00/13 | Bui | Hung Skaii Better Future | §§ 1341, 1343, 2314 and 1956 | Defendants stole about $1 million from Bui.  The money vanished, likely transferred by Defendants by interstate wire or U.S. mail to Vietnam. |
| 03/14/14 | Unknown Escrow Agent | Tri and Mana Ho | §§1343, 1344, 2314 and 1956 | Defendants obtained $239,076.68 by interstate wire, representing the proceeds from the sale of the West Hollywood Property; although some or all of the money should have been returned to Bui (who financed the acquisition), no money was returned to Bui. |
| 03/27/14 | LAN | Andy James Bui | §1951 | Lan threatened sham litigation against Bui unless she and her family abandoned their efforts to recover the money misappropriated by Defendants. |
| 04/30/14 | Tri | Hung | §§ 1343, 1344, 2314 and 1956 | $172,015 in proceeds from the sale of the West Hollywood Property was transferred to Hung by interstate wire; although some or all of the money should have been returned to Bui (who financed the acquisition), no money was returned to Bui. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CLAIM FOR RELIEF**

**(Violation of 18 U.S.C. § 1962(c) – RICO)**

**(Against Lan and Hung)**

125.   Bui refers to and incorporates as though fully set forth herein Paragraphs 1-124, inclusive, of this Third Amended Complaint.

**(Defendant Persons / Enterprises)**

126. Lan and Hung constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Lan/Hung Enterprise").

    a.  Lan and Hung shared the common purpose of (among other things) defrauding Bui of her money or property.

    b.  Lan and Hung are related in that they are business partners and members of the Vietnamese community located in Orange County, California.

    c.  The Lan/Hung Enterprise possessed sufficient longevity for its members to carry out their purpose(s) in that the Lan/Hung Enterprise succeeded in defrauding Bui out of millions of dollars.

Lan and Hung are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Lan/Hung Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  Said pattern of racketeering activity consisted of, but was not limited to, the acts of racketeering described in paragraphs 30-90 and 124.

127.   In the alternative to paragraph 126, the Nguyen Family Defendants constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Nguyen Family Enterprise").

a.  Members of the Nguyen Family Enterprise shared the common purpose of defrauding Bui of her money or property.

b.  Members of the Nguyen Family Enterprise are related in that they are members of the Nguyen Family or are employees/agents of the Nguyen Family.

c.  The Nguyen Family Enterprise possessed sufficient longevity for its members to carry out their purpose(s) in that they defrauded Bui of millions of dollars.

Lan and Hung are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Nguyen Family Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of racketeering described in paragraphs 30-90 and 124.

128. In the alternative to paragraphs 126-127, the Business Defendants constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Business Enterprise").

a.  Members of the Business Enterprise shared the common purpose of defrauding Bui of her money or property.

b.  Members of the Business Enterprise are related in that they are all owned or controlled by members of the Nguyen Family.

c.  The Business Enterprise possessed sufficient longevity for its members to carry out their purpose(s) in that they defrauded Bui of millions of dollars.

Lan and Hung are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Business Enterprise through a pattern of racketeering

activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  Said pattern of racketeering activity consisted of, but was not limited to, the acts of racketeering described in paragraphs 30-90 and 124.

129. In the alternative to paragraphs 126 through 128, Bui, as an individual, constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). Lan and Hung, are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of Bui through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  Said pattern of racketeering activity consisted of, but was not limited to, the acts of racketeering described in paragraphs 30-90and 124.

130. At all relevant times, the enterprises alleged in paragraphs 126 through 129 were engaged in, and their activities affected, interstate commerce and foreign commerce.

### (Pattern of Racketeering Activity)

131. All of the acts of racketeering described in paragraphs 30-90 and 124 were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Bui, their common result was to defraud Bui; Lan and Hung, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Bui was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

132. All of the acts of racketeering described in paragraphs 30-90 and 124 were continuous so as to form a pattern of racketeering activity in that Lang and Hung, through their enterprise(s), engaged in the acts of racketeering from August 2012 through April 2014 (at a minimum) and/or the acts of racketeering threaten to continue

indefinitely because the acts of racketeering are the regular way in which Lan does business (*see*, paragraphs 30-109, 121-124).

133. As a direct and proximate result of, and by reason of, the activities of the Lan and Hung, and their conduct in violation of 18 U.S.C. § 1962(c), Bui was injured in her business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Bui suffered damages to the extent Bui transferred money to Defendants in reliance on their false representations, omissions, statements and promises and to the extent that Defendants fraudulently obtained money from Bui. Bui is, therefore, entitled to recover threefold the damages she sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## SECOND CLAIM FOR RELIEF

### (Violation of 18 U.S.C. § 1962(d) – RICO Conspiracy)
### (Against Ton, Mimi, Vu, Skaii, Better Future, and Tri)

134. Bui refers to and incorporates as though fully set forth herein Paragraphs 1-133, inclusive, of this Third Amended Complaint.

135. As alleged in the First Claim for Relief, Lan and/or Hung violated 18 U.S.C. § 1962(c).

136. Ton, Mimi, Vu, Skaii, Better Future, and Tri conspired with Lan and/or Hung to conduct or to participate, directly or indirectly, in the conduct of the affairs of the enterprises (see ¶¶ 126-129) through a pattern of racketeering activity (see supra ¶¶ 30-90, 124) in violation of 18 U.S.C. § 1962(d). In particular, Ton, Mimi, Vu, Skaii, Better Future, and Tri intended to or agreed to further an endeavor of Lan and/or Hung which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor.

137. Bui was injured by Lan's, Hung's, Ton's, Mimi's, Vu's, Skaii's, Better Future's, and/or Tri's overt acts that are acts of racketeering or otherwise unlawful

---

under the RICO statute, which included (among other acts) acts of racketeering described in paragraphs 30-90 and 124, committed through the enterprises alleged in paragraphs 126-129.

138. As a direct and proximate result of, and by reason of, the activities of Ton, Mimi, Vu, Skaii, Better Future, and/or Tri and their conduct in violation of 18 U.S.C. § 1962(d), Bui was injured in her business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Bui suffered damages to the extent Bui transferred money to Defendants in reliance on their false representations, omissions, statements and promises and to the extent that Defendants fraudulently obtained money from Bui.  Bui is, therefore, entitled to recover threefold the damages she sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## THIRD CLAIM FOR RELIEF

### (Violation of California WIC §§ 15657.5, et seq.)

### (Against the Nguyen Family Defendants, Hung, and Tri)

139.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-141, inclusive, of this Third Amended Complaint.

140.     Bui was born in 1938, and at the time of the complained of herein, is and was over the age of sixty-five (65) years and is an elder as defined by the California Welfare and Institutions Code ("WIC") § 15610.27 and California Civil Code ("Civil Code") § 1761(f).

141.     As described above in Paragraphs 30 through 90, and 121 through 124, the Nguyen Family Defendants, Hung and Tri deliberately and wrongfully used their influence over Bui for their own benefit and financial gain.

142.     As described above in Paragraphs 30 through 90, and 121 through 124, Nguyen Family Defendants, Hung and Tri enjoyed a confidential relationship with Bui and assisted her in managing her financial affairs, a position they breached for their

own benefit and financial gain by deliberately and recklessly taking no less than $5.377 million of Bui's money without authority or consent of Bui, which was not sought or obtained.

143.    The conduct of as described above in Paragraphs 30 through 90, and 121 through 124, by the Nguyen Family Defendants, Hung and Tri, and each of them, constituted financial elder abuse under WIC § 15657.5 as defined in WIC § 15610.30 and they are each liable to Bui for her losses in an amount to be determined at trial.

144.    The Nguyen Family Defendants, Hung and Tri, and each of them, are guilty of recklessness, oppression, fraud and malice within the meaning of WIC § 15657.5 and California Civil Code ("Civil Code") § 3294.  An award of punitive and exemplary damages is justified in an amount according to proof.

145.    Under WIC § 15684, the Nguyen Family Defendants, Hung and Tri, and each of them, are liable to Bui for reasonable attorneys' fees and costs of suit.

146.    In doing the acts and omissions alleged herein, the Nguyen Family Defendants, Hung and Tri, and each of them, knew or should have known that their conduct was directed to a person over the age of sixty-five (65) and that their conduct would result in a substantial loss of assets essential to the health or welfare of the Bui, thereby entitling Bui to recover treble damaged, penalties and other such remedies pursuant to Civil Code § 3345.

## FOURTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code §§ 17200, et seq.)

### (Against All Defendants)

147.    Bui refers to and incorporates as though fully set forth herein Paragraphs 1-146, inclusive, of this Third Amended Complaint.

148.    Defendants' conduct as alleged above in Paragraphs 30 through 90, and 121 through 124, violates California Business & Professions Code §§ 17200, et seq. as constituting unfair, unlawful or fraudulent business practices targeting a senior

citizen within the meaning of those statutes.

149.    Bui was born in 1938, and at the time of the complained of herein, is and was over the age of sixty-five (65) years and in a elder as defined by the Business & Professions Code § 17206.1(b)(1).

150.    Pursuant to Business & Professions Code § 17203, Bui seeks from Defendants, and each of them, restitution and the disgorgement of all monies taken from her in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## (Breach of Fiduciary Duty)
## (Against Hung, Lan, Mimi)

151.    Bui refers to and incorporates as though fully set forth herein Paragraphs 1-150 inclusive, of this Third Amended Complaint.

152.    As alleged more specifically herein in Paragraphs 30 through 90, Hung, Lan, and Mimi formed a partnership with Bui whereby Hung, Lan, Mimi would invest Bui's money in real property for their mutual benefit.

153.    As partners of Bui, Hung, Lan, and Mimi, and each of them, owed Bui fiduciary duty of care and fiduciary duty of loyalty, pursuant to California Corporations Code § 16404.

154.    Hung, Lan, and Mimi, and each of them, breached their fiduciary duties owed to Bui by carrying out the illegal conduct against Bui as alleged herein.

155.    As a direct and proximate result of the breaches by Hung, Lan, and Mimi, and each of them, Bui has suffered monetary damages as prayed for below.

156.    Hung, Lan, and Mimi, and each of them, are guilty of recklessness, oppression, fraud and malice within the meaning of Civil Code § 3294.  An award of punitive and exemplary damages is justified in an amount according to proof.

## SIXTH CLAIM FOR RELIEF

### (Breach of Promissory Note #1)

### (Against Hung)

157.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-156, inclusive, of this Third Amended Complaint.

158.     On or about August 2, 2012, in the County of Orange, California, for good and valuable consideration, Bui made a loan in the amount of Forty Thousand Dollars ($40,000) to Hung, evidenced by an unsecured promissory note ("Note #1"), attached hereto as Exhibit #1 and incorporated by this reference as though fully set forth herein.

159.     Hung failed, and continues to fail, to make any interest or principal payments to Bui. Bui has provided notice to Hung of the breach and default of this Note #1, and Hung has failed to cure his breaches and defaults. Therefore, the full unpaid balance and all accrued interest are immediately due and payable.

160.     As a direct and proximate result of Hung's breaches, Bui has been damaged in the sum of Forty Thousand Dollars ($40,000), together with all interest thereon from August 2, 2012, as set forth in Note #1.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Promissory Note #2)

### (Against Hung)

161.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-159, inclusive, of this Third Amended Complaint.

162.     On or about November 6, 2012, in the County of Orange, California, for good and valuable consideration, Bui made a loan in the amount of One Million Dollars ($1,000,000) to Hung. In connection therewith, Bui and Hung made and executed a promissory note ("Note #2"), attached hereto as Exhibit #2 and incorporated by this reference as though fully set forth herein.

163.     Note #2 provided that Hung was to make regular monthly interest payments of two thousand dollars ($2,000) beginning on January 1, 2013, with the principal balance to be paid in full on November 1, 2014. In or about July 2013, Hung failed, and continues to fail, to pay the monthly interest payments to Bui and accrued interest and late payment charges. Bui has provided notice to Hung of such breach and default, and Hung has failed to cure his breaches and defaults. Therefore, the full unpaid balance and all accrued interest are immediately due and payable.

164.     As a direct and proximate result of Hung's breaches, Bui has been damaged in the sum of One Million Dollars ($1,000,000), together with all interest thereon from January 1, 2013, as set forth in Note #2.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Promissory Note #3)
### (Against Hung)

165.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-164, inclusive, of this Third Amended Complaint.

166.     On or about March 4, 2013, in the County of Orange, California, for good and valuable consideration, Bui made a loan in the amount of Five Hundred Thousand Dollars ($500,000) to Hung. In connection therewith, Hung made and executed a promissory note ("Note #3") in Vietnamese, translated into English, attached hereto as Exhibit #3 and incorporated by this reference as though fully set forth herein.

167.     Note #3 provided that Hung was to make regular monthly payments of One Thousand Dollars ($1,000) beginning on April 1, 2013, with the balance to be paid in full on April 1, 2015. Thereafter, Hung failed, and continues to fail, to pay the amount due to Bui and accrued interest and late payment charges. Bui has provided notice to Hung of such breach and default, and Hung has failed to cure his breaches and defaults. Therefore, the full unpaid balance and all accrued interest is immediately due and payable.

168.     As a direct and proximate result of Hung's breaches, Bui has been damaged in the sum of Five Hundred Dollars ($500,000), together with all interest thereon from April 1, 2013, as set forth in Note #3.

## NINTH CLAIM FOR RELIEF
## (FRAUD)
### (Against Hung, Lan, and Mimi)

169.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-168, inclusive, of this Third Amended Complaint.

170.     As described with particularity in Paragraphs 30 through 90, inclusive, Hung, Lan, and Mimi made representations to Bui regarding loans, purchase of real property, the management of real property, and tax liability.

171.     The representations made by Hung, Lan, and Mimi were, in fact, false.

172.     When Hung, Lan, and Mimi made these representations, Hung, Lan, and Mimi knew them to be false and made the representations with the intention to deceive and defraud Bui to act in reliance on the representations in the matter herein, or with the expectation that Bui would so act.

173.     Bui, at the time these representations were made by Hung, Lan, and Mimi, was ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Bui was induced and did, loan money, purchase property, convey authority to manage property, and transfer money to pay off tax liabilities. Had Bui known the actual facts, Bui would not have taken such actions.

174.     Bui reasonably relied on Hung, Lan, and Mimi's representations as Hung, Lan, and Mimi had gained Bui's complete trust and confidence as experts in real estate, land development, and wealth management, and believed they were acting in her best interests.

175.     As a proximate result thereof, Bui has been damaged in an amount

to be determined at trial.

176.     The   aforementioned   conduct   involved   intentional misrepresentations, deceit, and concealment of material facts known to Hung, Lan, and Mimi, and each of them, with the intention on the part of all Hung, Lan, and Mimi to thereby deprive Bui of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Bui to cruel and unjust hardship and in conscious disregard of Bui's rights, so as they are guilty of recklessness, oppression, fraud and malice within the meaning of Civil Code § 3294.  An award of punitive and exemplary damages is justified in an amount according to proof.

### TENTH CLAIM FOR RELIEF
### (NEGLIGENCE)
### (Against Hung, Lan, and Mimi)

177.     Bui refers to and incorporates as though fully set forth herein Paragraphs 1-176, inclusive, of this Third Amended Complaint.

178.     Bui is informed and believes, and thereon alleges, that Hung, Lan, and Mimi owed Bui a duty of care to ensure that monies they received from Bui were properly applied to the investment in real property, as represented by Hung, Lan, and Mimi to Bui.

179.     Hung, Lan, and Mimi breached the duty of care to Bui by failing to apply Bui's monies given them by Bui to investment in real property, as presented by Defendants to Bui.

180.     As a direct and proximate result of Hung's, Lan's, and Mimi's breaches of their duties of care, Bui has sustained consequential damages in an amount to be proven at trial consisting of amounts incurred and losses associated with Bui's inability to invest the amounts paid by Bui to Defendants in the manner actually desired and as promised by Defendants.

181.     Additionally, as a direct and proximate result of Hung's, Lan's, and Mimi's breaches of their duties of care, Bui has sustained consequential damages in an

amount to be proven at trial resulting from the inaccessibility of the funds given, which caused Bui to lose the ability to use the funds for other obligations and which caused Bui to suffer damages associated with the inability to pay expenses related to other properties, obligations and transactions.

182. Statutory interest is owed on the principal amount of Bui's damages from the dates on which the various portions of the amounts provided to the Hung, Lan, and Mimi were actually provided, and dates on which Bui suffered the damages described herein. The actual dates on which such damages were suffered shall be determined at trial.

183. Bui first learned of Hung, Lan, and Mimi's breaches of their duties of care on a date on or about December 1, 2013.

### ELEVENTH CLAIM FOR RELIEF
### (NEGLIGENT MISREPRESENTATION)
### (Against Hung, Lan, and Mimi)

184. Bui refers to and incorporates as though fully set forth herein Paragraphs 1-183, inclusive, of this Third Amended Complaint.

185. As described with particularity in Paragraphs 30 through 90, inclusive, Hung, Lan, and Mimi made false representations of fact regarding their intentions regarding monies Bui gave to Hung, Lan, and Mimi for the purchase of real property

186. If Hung, Lan, and Mimi's misrepresentations were not intentionally or recklessly made, then Defendants were negligent in making false, incomplete and misleading statements. Bui relied on those misrepresentations.

187. The factual representations made by Hung, Lan, and Mimi were material and were false and misleading. Hung, Lan, and Mimi made the representations without any reasonable grounds for believing them to be true. They failed to exercise

reasonable care or competence in making those representations and in ascertaining of failing to ascertain the truth or falsity of their representations.

188.    Hung, Lan, and Mimi made these false, misleading and incomplete representations of fact with the intent to influence the actions of Bui.

189.    Bui reasonably and justifiably relied on Hung, Lan, and Mimi misrepresentations regarding investing her money in real property. Hung, Lan, and Mimi knew that Bui would rely on such representations.

190.    At the time Bui acted, Bui was unaware of the true facts and would have acted differently if she had known the true facts.

191.    As a proximate result thereof, Bui has been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

## TWELFTH CAUSE OF ACTION
## (ACCOUNTING)
### (Against All Defendants)

192.    Bui refers to and incorporates as though fully set forth herein Paragraphs 1-191, inclusive, of this Third Amended Complaint.

193.    As a victim of Defendants' deliberate, calculated and malicious illegal acts which have resulted in a loss of not less than $5.377 million, Bui is entitled to have an accounting of all monies taken by Defendants.

194.    Therefore, Bui demands a full accounting by Defendants and DOES 1 through 10, inclusive, and each of them, of all income, expenses, fees, and transfers of money, loans and encumbrances related in any way to their use of Bui's money.

**WHEREFORE** Bui prays judgment against Defendants as follows:

**As to Bui's First and Second Claim for Relief:**

1.    For compensatory damages in the amount not less than $5,377,000.00, and trebling of such damages pursuant to 18 U.S.C. § 1964(c);

2.    For pre-judgment and post-judgment interest according to law;

3.      For reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c);

4.      For costs of suit incurred pursuant to 18 U.S.C. § 1964(c); and

5.      For such other and further relief as the Court deems just and proper.

**As to Bui's Third Claim for Relief:**

6.      For compensatory damages in an amount not less than $5,377,000.00, pursuant to WIC § 15657.5, and trebling of such damages pursuant to Civil Code § 3345;

7.      For pre-judgment and post-judgment interest according to law;

8.      For punitive damages pursuant to WIC § 15657.5 and Civil Code § 3294(a)

9.      For reasonable attorney's fees pursuant to WIC § 15684;

10.     For costs of suit incurred pursuant to WIC § 15684;

11.     For such other and further relief as the Court deems just and proper.

**As to Bui's Fourth Claim for Relief:**

12.     For restitution and disgorgement in an amount not less than $5,377,000.00, pursuant to Business & Professions Code § 17203;

13.      For pre-judgment and post-judgment interest according to law;

14.     For costs of suit;

15.     For such other and further relief as the Court deems just and proper.

**As to Bui's Fifth Claim for Relief:**

16.     For compensatory damages in an amount not less than $5,377,000.00;

17.      For pre-judgment and post-judgment interest according to law;

18.     For punitive damages pursuant to Civil Code § 3294(a);

19.     For costs of suit;

20.     For such other and further relief as the Court deems just and proper..

**As to Bui's Sixth Claim for Relief:**

21.     For compensatory damages in an amount not less than $40,000.00;

22.     For pre-judgment and post-judgment interest according to law;

23.     For costs of suit;

24.     For such other and further relief as the Court deems just and proper.

**As to Bui's Seventh Claim for Relief:**

25.     For compensatory damages in an amount not less than $1,000,000.00;

26.      For pre-judgment and post-judgment interest according to law;

27.     For costs of suit;

28.     For such other and further relief as the Court deems just and proper.

**As to Bui's Eighth Claim for Relief:**

29.     For compensatory damages in an amount not less than $500,000.00;

30.      For pre-judgment and post-judgment interest according to law;

31.     For costs of suit;

32.     For such other and further relief as the Court deems just and proper.

**As to Bui's Ninth Claim for Relief:**

33.     For compensatory damages in an amount not less than $5,377,000.00;

34.      For pre-judgment and post-judgment interest according to law;

35.     For punitive damages pursuant to Civil Code § 3294(a);

36.     For costs of suit;

37.     For such other and further relief as the Court deems just and proper.

**As to Bui's Tenth Claim for Relief:**

38.     For compensatory damages in an amount not less than $5,377,000.00;

39.     For costs of suit;

40.     For such other and further relief as the Court deems just and proper.

**As to Bui's Eleventh Claim for Relief:**

41.     For compensatory damages in an amount not less than $5,377,000.00;

42.      For pre-judgment and post-judgment interest according to law;

43.     For costs of suit;

44.     For such other and further relief as the Court deems just and proper.

**As to Bui's Twelfth Claim for Relief:**

45.     For a full accounting by Defendants and DOES 1 through 10, inclusive, and each of them, of all income, expenses, fees, and transfers of money, loans and encumbrances related in any way to their use of Bui's money.

46.     For costs of suit;

47.     For such other and further relief as the Court deems just and proper.

DATE:  January 4, 2018                    SCHUCHERT, KRIEGER, TRUONG,

SPAGNOLA & KLAUSNER, LLP


By:    /s/Eliot F. Krieger
Eliot F. Krieger
Charles T. Spagnola
Siobhan M. Bishop, P.C.
Karl D. Truong
Attorneys for Plaintiff Mai Ngoc Bui

## **DEMAND FOR JURY TRIAL**

(F.R.Civ.P. 38(b))

Plaintiff Mai Ndoc Bui hereby demands a trial by jury in the above-entitled action, pursuant to Federal Rule of Civil Procedure 38(b).

DATE:  January 4, 2018                    SCHUCHERT, KRIEGER, TRUONG,

SPAGNOLA & KLAUSNER, LLP


By:    /s/Eliot F. Krieger
Eliot F. Krieger
Charles T. Spagnola
Siobhan M. Bishop, P.C.
Karl D. Truong
Attorneys for Plaintiff Mai Ngoc Bui

THIRD AMENDED COMPLAINT

39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I certify that on the 4th day of January 2018, I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Eliot F. Krieger
Eliot F. Krieger

THIRD AMENDED COMPLAINT